SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesse Ramon Wozniak, ) | No. CV 10-2414-PHX-DGC (JRI) |
| )  Plaintiff, ) | **ORDER** |
| vs. ) | |
| )  Joseph Arpaio, et al., ) | |
| )  Defendants. ) | |

Plaintiff Jesse Ramon Wozniak filed this civil rights action under 42 U.S.C. § 1983 against various employees of Maricopa County Sheriff's Office (MCSO). Plaintiff alleged that, in violation of his constitutional rights, Defendants failed to provide Plaintiff with psychiatric medications, delayed providing him emergency medical care after he cut his arms and swallowed a screw, and placed him in four-point restraints. (Doc. 12.) Defendants Christy, Cretchen, Fleming, Garcia, Hanson, Pricardo, Roberts, and Wiese move to dismiss on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).[1] (Doc. 48.) Defendants Horton, London, Maynes, and Withers join the motion, as do Defendants Okafor and Joseph.[2] (Docs. 55, 59.)

---

[1] The Court sent the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. 49.)

[2] The only other Defendant—R.N. Caroline—was served on April 29, 2011. (Doc. 63.)

The Court will grant the motion and dismiss the case.

**I.   Motion to Dismiss**

   **A.   Legal Standard**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). A prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

   **B.   Parties' Contentions**

In support of their motion, Defendants submit two affidavits of Selethia Down, a Sergeant assigned to the Inmate Hearing Unit. Her duties include receipt, processing, tracking, and storage of inmate grievances. (Doc. 48, Ex. 1, Down Aff., dated March 4, 2011, ¶ 1-2.) She described the MCSO grievance procedures, which are set out in Policy DJ-3, Inmate Grievance Procedure. (Id. ¶ 4.) According to Down, it is a multi-tiered grievance system, which includes (1) the initial grievance and ultimate decision by the Bureau Hearing Officer; (2) the institutional appeal; and (3) the external appeal. (Id. ¶ 5-7, Attach. A, Policy DJ-3.) She also attests that the grievance form itself contains language explaining the steps in the grievance process. (Id., ¶ 9.)

Down attests that Plaintiff filed grievance #201006978 on August 19, 2010, alleging

that on August 17, 2010, he was placed in a flat metal bed for five hours due to a four-point restraint. (Id. ¶ 13a.) Plaintiff filed no external appeal. (Id. ¶ 14.) He also filed grievance #201006979 on August 19, 2010, alleging that on August 16, 2010 he swallowed a three inch screw during a suicidal blackout, but was refused medical treatment and was not treated for 13 hours. (Id. ¶ 13b.) Again, Plaintiff filed no external appeal. (Id. ¶ 15.)

Down attests that Plaintiff filed 22 inmate grievances while incarcerated from March 27, 2010 to February 9. 2011. (Id., Ex. 2, Down Aff., dated April 7, 2011, ¶ 2.) He filed no grievance complaining that he received incorrect medication. (Id. ¶ 4.)

Plaintiff responds that the Mental Health Facility P3 does not allow an inmate to file his own grievances or permit paperwork or property in the cell. (Doc. 56 at 1.) Inmates must rely on the counselors to file grievances. (Id.) Plaintiff asserts that his chart noted that he could only go through his treatment team for any requests and that Steve, Plaintiff's counselor, only came one time per week. (Id. at 1-2.) Sometimes Plaintiff did not see his counselor for as many as three weeks at a time and no other counselors were assigned to him. (Id. at 2.) Plaintiff also asserts that he received no response to his appeals in either matter and he does not understand why Defendants' copies show answers. (Id.) After filing the appeals, Plaintiff did not see his counselor for two weeks and so had no time to file his external grievances. (Id. at 2.) He asserts that in good faith he tried to complete the grievance process as of March 2011, but was out of time frames and his external appeals were not accepted. (Id. at 3.) He claims that Defendant tampered with the evidence. (Id. at 4.) Plaintiff makes similar arguments in his responses to the notices of Joinder. (Doc. 60.)

In their reply, Defendants assert that at the time that Plaintiff needed to file an external appeal, he was housed in P1, where he had access to writing tools. (Doc. 61 at 2.) They offer the affidavit of Dawn Noggle, Director of Mental Health Services for Maricopa County Correctional Health Services (CHS). Her duties include overseeing mental health care provided at the Lower Buckeye Jail. (Id., Ex. A, Noggle Aff. ¶ 1.) She attests that she reviewed housing records and that from August 2010 to April 6, 2011, Plaintiff was housed either in "P1" or "P3" of the Psych House. (Id. ¶¶ 3-4.) Unit P3 is for patients needing

- 3 -

heightened watch; their privileges are restricted, including access to pencils. (Id. ¶ 5.) CHS policy is to assist patients who express a desire to write something. Noggle attests that she has personal knowledge of Plaintiff requesting and receiving assistance on several occasions while at P3. (Id. ¶¶ 6-7.) Unit P1 is for patients determined to be inappropriate for general population or who have known behavior problems or who are being "stepped down" from a higher level of health watch before being returned to general population. (Id. ¶ 8.) P1 allows access to personal items such as pencils. (Id. ¶ 9.)

From August 16, 2010 until September 28, 2010, Plaintiff was housed in P3, and from September 29 to October 19, 2010, he was housed in P1. (Id. ¶¶ 10-11.) He was relocated to P3 on October 19, but moved to P1 again on October 20 and was there until March 5, 2011. (Id. ¶¶ 12-14.)

Defendants argue that if Plaintiff believed the jail failed to provide him a timely response to both of his grievance appeals, he needed to file an external grievance appeal as explained in the Inmate Grievance Procedure Policy Number DJ-3. (Doc. 61 at 4.)

Plaintiff also files a response to the reply, in which he asserts that he requested help from officers and CHS staff, and reiterates his arguments in his initial response. (Doc. 66 at 1.) He attaches external grievance appeals, dated March 20, 2011.

**C.   Analysis**

Defendants have met their burden to establish the existence of a grievance procedure and that Plaintiff failed to exhaust his remedies under it. See Wyatt, 315 F.3d at 1119; see also Brown, 422 F.3d at 936-37. Although the law does not require exhaustion if Plaintiff was unable to file grievances, Plaintiff fails satisfactorily to establish that he was, in fact, unable to file grievance appeals.

The evidence shows that Plaintiff filed Grievance 201006978 on August 19, 2010, regarding his placement in 4-point restraints. (Doc. 48, Ex. F.) He received a response from the shift supervisor on September 3, 2010. Plaintiff filed a grievance appeal on October 2, 2010, and received a response on November 16, 2010. (Id.) It says that Plaintiff was "unable to sign ⊘ pencil." (Id.) Grievance 201006979 regarding the alleged improper

- 4 -

medical treatment following cutting himself and swallowing a screw was also filed on August 19, and the response from the shift supervisor was provided on September 3. (Doc. 48, Ex. G.). The appeal is dated October 1 and the jail commanders' response was provided on November 16. That response also notes that Plaintiff was "unable to sign ⌀ pencil." (Id.) There is no evidence of any grievance complaining that Plaintiff was not provided his normal medications.

Plaintiff claims that he could not file an external appeal while in P3, but Defendants' evidence shows that Plaintiff was in P3 from August 16 to September 28. During this time Plaintiff filed two grievances. Although Plaintiff says that his counselor Steve was not available except once per week and was sometimes unavailable for longer periods, Plaintiff never claims that he asked Steve or anyone else to help him file an external appeal.

Moreover, Plaintiff does not deny Defendants' assertion that Plaintiff was, in fact, in P1 beginning September 29. He filed two appeals in early October, apparently while he was in P1. And Plaintiff does not deny that he was in P1 when the external appeal following the November 16 responses should have been filed. Although the notations on the institutional appeal responses indicate that Plaintiff could not sign because he did not have a pencil, Plaintiff does not dispute Defendants' assertion that writing tools were available on P1 for filing the external appeals. Plaintiff's general assertion that he asked jail and CHS staff to help him is not sufficient to show that he attempted to file his external appeal and was prevented from doing so or unable to do so.

Plaintiff also claims that he received no responses to the institutional appeals and that Defendants tampered with the evidence. Plaintiff's mere suggestion that evidence was tampered with is insufficient to defeat Defendants' motion. See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 81 (5th Cir. 1987). Moreover, as Defendants note, if Plaintiff thought he had not received a response to the grievance or grievance appeal, he could proceed to the next step in the process. (Doc. 48, Ex. 1, Attach. A, at 4.) Although Plaintiff claims that while on P3 he never obtained a copy of the MCSO DJ-3 policy, the fact remains that he completed the process through the institutional appeal and the institutional appeal form states that

1  if the inmate is not satisfied, he can submit an external appeal within 24 hours.  (Doc. 48, Ex. 1,
2  Attachs. F, G.)  Finally, Plaintiff's sur-reply is not proper.  See Ekweani v. Maricopa County
3  Sheriff's Office, 2009 WL 976520, at *1 (D. Ariz. 2009).  Even if the Court were to consider the
4  external appeals dated March 2011, they do not satisfy the PLRA grievance requirements because
5  the PLRA requires exhaustion prior to filing the lawsuit.  McKinney v. Carey, 311 F.3d 1198, 1120-
6  21 (9th Cir. 2002) (exhausting remedies during the course of the lawsuit does not comply with the
7  requirement).  Plaintiff's Complaint was filed with the Clerk of Court on November 8, 2010.
8  (Doc. 1.)

9       The Court will grant Defendants' motion and dismiss the claims without prejudice.

10 **IT IS ORDERED:**

11      (1)  The reference to the Magistrate Judge is withdrawn as to Defendants' Motion
12 to Dismiss (Doc. 48).

13      (2)  Defendants' Motion to Dismiss (Doc. 48) is **granted.**

14      (3)  The claims are dismissed without prejudice, and the Clerk of Court must enter
15 judgment accordingly.

16      (4) The Clerk is directed to terminate this action.

17      DATED this 23rd day of May, 2011.

*/s/ David G. Campbell*
David G. Campbell
United States District Judge